# In the United States Court of Federal Claims

No.14-1164C
(Re-filed: March 26, 2015)[1]

* * * * * * * * * * * * * * * * * * * * * * *
MONTEREY CONSULTANTS, INC.,

*Plaintiff*,

v.

THE UNITED STATES,

*Defendant*,

and

LOCH HARBOUR GROUP, INC.

*Intervenor.*
* * * * * * * * * * * * * * * * * * * * * * *

Bid protest; Corrective action; Recision of award; Organized conflict of interest.

*Deitra Crawley Bryant*, Atlanta, GA for plaintiff. *Daniel Donohue*, Washington, DC, of counsel.

*Albert S. Iarossi*, Trial Attorney, Civil Division, United States Department of Justice, with whom were *Joyce R. Branda*, Acting Assistant Attorney General, *Robert E. Kirschman, Jr.*, Director, *Donald E. Kinner*, Assistant Director, for defendant.

*Lee Dougherty*, Tysons Corner, VA, for intervenor. *Katherine A. Straw*, Tysons Corner, VA, of counsel.

---

[1]. This opinion was originally filed under seal. The parties were directed to confer and propose redactions. They did not come to an agreement. Plaintiff proposed redacting certain names. Defendant and intervenor opposed the redactions because those names are not protected information. We agree with defendant and intervenor. The opinion appears in full below.

OPINION

This is a protest of the Department of Veteran Affair's recision of a task order to Monterey Consultants, Inc. for services in support of the agency's program to verify the status of small and veteran-owned businesses. The task order to Monterey was cancelled as a corrective action because the agency concluded that Monterey had a potential or actual organizational conflict of interest. Plaintiff alleges that neither is true. The parties have filed cross-motions for judgment on the administrative record. The matter is fully briefed, and oral argument was held on March 4, 2015. Because the agency was not irrational in its belief that Monterey's access to solicitation documents created at least the appearance of a conflict of interest, we grant defendant's and intervenor's motions for judgment and deny plaintiff's.

BACKGROUND

Plaintiff, Monterey Consultants, Inc. ("Monterey"), held a blanket purchase agreement ("BPA") with the Department of Veteran Affairs ("VA") under which it provided support services to the VA's Center for Verification and Evaluation ("CVE") and Office of Small and Disadvantaged Business Utilization ("OSDBU").[2] This BPA, called the Integrated Product Team ("IPT") Facilitation and Acquisition Services Blanket Purchase Agreement was the agency's long-standing contract vehicle for procuring a wide variety of services in support of all of OSDBU's various missions (*e.g.,* research, verification, analysis, outreach, and training). Monterey was awarded the BPA in February 2013. It did work under a variety of call orders, including processing and verification services for the CVE and administrative support of the OSDBU's acquisition efforts.

In an effort to reduce the scope of the work procured with a single contracting vehicle, the IPT BPA, the agency let the BPA expire on its terms and sought to replace its acquisition of some of those services through two separate contracts placed as task orders under the GSA's Federal Supply

---

2. VA's OSDBU is responsible for increasing small business utilization in VA contracting through a variety of means. The CVE is a subunit of OSDBU and is responsible for verifying the small and disadvantaged status of contractors doing business with the VA.

Schedule ("FSS").[3] The solicitation at issue in this protest was identified by the agency as a follow-on for two specific BPA call orders, 18 and 19. Administrative Record ("AR") 91 (Acquisition Plan). Call orders 18 and 19 were for support services related to the CVE's verification of small business status. Monterey had performed under both of those orders pursuant to the BPA. Monterey also provided support for other OSDBU work, including acquisition support under call order 17.

The VA issued Request for Quote No. VA119A-14-Q-0324 ("RFQ" or "solicitation") on June 13, 2014, as a 100 percent set-aside for service-disabled veteran owned small businesses holding one or both of two GSA FSS contracts for support services.[4] The RFQ sought "administrative, paralegal, project management, and professional support" for the CVE. AR 91. Specifically, these services were to be in support of the CVE's verification processing and management of that processing.[5] *See* AR 916.

The solicitation called for a best value award to the offeror "determined to be the most beneficial to the Government." AR 158. Offerors were evaluated based on four factors: 1) Technical Approach, 2) Management Approach, 3) Past Performance, and 4) Price. The non-price factors, combined, were more important than price, which meant that the agency reserved the right to award to a higher-priced offeror who offered superior non-price elements. AR 158.

The RFQ addressed Organizational Conflicts of Interest ("OCIs") in section 18:

> It is recognized by the parties that the efforts to be performed by the contractor under this contract are of such a nature that they

---

3. To cover its need for support services during the interim period between the expiration of the IPT BPA and the award of the solicitation, the agency awarded a six-month sole source bridge contract to an unrelated firm.

4. Those FSS contracts are 874-1 for "Integrated Support Service" and 874-7 for "Integrated Business Program Support Services."

5. The other work in support of OSDBU's broader tasks was solicited under Request for Quote No. VA119A-14-Q-0334. That solicitation was separately protested in this court, *Monterey Consultants, Inc. v. United States*, No. 14-1234C, but that protest was voluntarily withdrawn on March 9, 2015.

> may create a potential Organizational Conflict of Interest (OCI) as contemplated by Subpart 9.5 of the FAR. It is the intention of the parties that the contractor shall not engage in any contractual activities which may impair its ability to render unbiased advice and recommendations, or in which it may gain an unfair competitive advantage as a result of the knowledge, information and experience gained during the performance of this contract. It does not include the normal flow of benefits from incumbency. **Contractors performing on other contracts in support of Verification shall be presumed to have an OCI with respect to this contract and are ineligible to quote on this requirement**, due to the integrated nature of work perform[ed] under this solicitation and existing contracts.

AR 953 (emphasis supplied).

A further condition for bidding on the RFQ was that offerors were required to "agree not to participate . . . in any acquisition wherein: (1) The contractor has participated in the analysis and recommendation leading to the acquisition decision to acquire such services; or (2) the Contractor may have an unfair competitive advantage resulting from information gained during the performance of this contract." AR 953. The solicitation went on to instruct offerors who believed that their participation would cause an OCI to "include in [their] proposal[s] an appropriate discussion and mitigation plan." AR 954. The VA would review such materials, make a determination of whether there was an OCI, and, if so, determine whether the mitigation plan was sufficient to allow the offeror to participate. *Id.*

Three offerors submitted proposals, including plaintiff and intervenor, Loch Harbour Group, Inc. ("Loch Harbour"). Monterey was initially awarded the contract on September 8, 2014, based on its higher technical scores, which, in the agency's eyes, made it a better value despite its higher price. The base contract was for a period of 16 weeks from September 10, 2014-December 24, 2014, with an agency option to extend up to four years thereafter. On September 29, 2014, Loch Harbour filed a protest in this court, the principal ground of which was that Monterey was ineligible for award because it had an OCI stemming from its prior work under the BPA. Upon reviewing the complaint, the Contracting Officer ("CO"), James Boughner, began an investigation into the possible OCI based on Monterey's prior work for OSDBU and CVE.

The CO interviewed several agency officials in CVE and OSDBU, including Eugene Skinner, the Deputy Director of Acquisitions at OSDBU, John Perkins, Program Manager for Evaluation at CVE, and Jeffrey Gault, the Acting Director of CVE. *See* AR 1560-66. The CO made email inquiries and communicated with other contracting personnel involved, asking questions regarding both Monterey's prior work and its proposal. *See* AR 1560-66, 1580-81. In addition, Mr. Boughner corresponded directly with Monterey by email on several occasions.

The CO recorded his initial findings in a letter to Monterey dated November 3, 2014. Because the initial findings were not final, he invited comment from Monterey. In the letter, he stated his finding that, prior to the solicitation's public release, all of Monterey's and its subcontractor's personnel had access to documents relating to the solicitation, including the requirements, independent government cost estimates, acquisition plan, market research, and evaluation criteria. *See* AR 1568-70. The CO also found that Monterey personnel provided services directly relating to the preparation of the solicitation. AR 1569. The letter also detailed Mr. Boughner's communication with Mr. Skinner of OSDBU and Zachary Wilcox of the VA's Strategic Acquisition Center. Both of those gentlemen informed Mr. Boughner that Monterey did not have, or did not provide, an OCI mitigation plan for its work under the BPA. *See* AR 1567.1 (email chain with Mr. Wilcox); AR 1565 (questions from CO and answers by OSDBU officials). The BPA solicitation required that the bidder have such a plan, but Monterey was not, apparently, asked to provide it. Mr. Skinner did inform the CO that Monterey personnel working on the BPA call orders were required to sign non-disclosure agreements.

On November 17, 2014, Mr. Boughner sent another letter to Monterey informing it of his final conclusions regarding the OCI investigation and the agency's intent to take corrective action. He found a potential OCI resulting from Monterey employee access to solicitation documents and a lack of mitigation plan in place for Monterey. AR 1598-1600. The CO's letter stated that Monterey had a potential OCI "at the time [it] submitted its offer and that no efforts were made by either OSDBU or Monterey to avoid or mitigate the conflict of interest prior to award to Monterey." AR 1598. This resulted from Monterey's access to "the Government's requirements and other acquisition documents prior to submission of their offers in response" to the RFQ, thus creating the potential for a competitive advantage over other offers due to unequal access to information. *Id.* This conclusion was based on the following specific findings:

> 1. Monterey and its subcontractor CACI "had access to documents under the solicitation and provided administrative duties and recommended edits to the requirements documents." *Id.* Monterey uploaded these documents, at least some of which were nonpublic, onto a VA server, which it continued to have access to.
>
> 2. "There was no OCI Risk Mitigation Plan in place as required by [FAR] 9.504(e)." *Id.* Neither the CO nor OSDBU's acquisition director were aware of such a plan for Monterey despite Monterey's insistence in its November 4 letter to the CO that it had such a plan.
>
> 3. The CO also pointed out that Monterey's technical proposal in response to the RFQ represented that neither Monterey nor its subcontractors had an OCI. The CO found this to be further support for his conclusion that Monterey did not have an mitigation plan in place (because one would not have been needed if the bidder felt it had no OCI). *See* AR 1599.
>
> 4. Although Monterey employees "signed Non-Disclosure Agreements in the course of their duties in accessing these documents, this was inadequate, because there was no Mitigation Plan . . . to show how their organizational and/or management system or other actions would avoid or mitigation any actual or potential [OCIs]" as required by applicable regulations and the solicitation itself. *Id.*

As a result, Monterey's task order award was "rescinded effective December 25, 2014." AR 1600.

Monterey responded to the November 3, 2014 letter and November 17 notice of corrective action with a series of phone calls, emails, and letters over a three week span. Monterey represented to Mr. Boughner both that it had a mitigation plan, dating back to its BPA proposal, and that any solicitation information to which it had access would not have conferred on it any competitive advantage because all the information was eventually released to the other offerors. *See* AR 1578-79 (November 4, 2014 letter to CO). Monterey provided a copy of the mitigation plan that it avers was in place since December 2011 and that was mentioned in its proposal for the BPA, AR 1623-27, along with the mitigation plan of its subcontractor CACI, AR 1629-36. In further support of its assertion regarding lack of competitive advantage, Monterey pointed to the non-disclosure agreements ("NDAs") signed by its and CACI's personnel performing work under the BPA.

Monterey also provided five unsworn statements from employees who provided acquisition support under the BOA call orders. AR 1640-48, 1651, 1662, 1688-93. In one of its letters to the CO, Monterey claims that these were all of the employees then providing acquisition support. AR 1607 (November 18, 2014 letter to CO). In these declarations, dated November 18, 2014, Monterey and CACI employees claim not to have had access to "any information" or "any non-public documents" relating to the solicitation. *See, e.g.*, AR 1692 (Decl. of Daniel Swart). Several of these employees signed second declarations, making minor biographical changes, but dated the same day as the original. One employee, Daniel Swart, signed three different declarations, changing his employer and date of employment.

During the course of the OCI investigation, OSDBU's Director of Acquisition Support, Jules Tchoujan became aware of an email exchange between CACI employees Daniel Swart and Kathleen Wilson, both of whom worked under the BPA in the OSBDU and who were involved in preparing Monterey's proposal for the related solicitation for work for the OSBDU. *See* AR 1580-97. Although it is not entirely clear from reading the email exchange included in the record who was doing precisely what, it is clear that one of them is advising the other on drafting Monterey/CACI's proposal in response to the other solicitation for the OSDBU work. As a result, the CO made an additional finding that Monterey had an actual OCI as a result of the involvement of Mr. Swart in both the preparation of Monterey's proposal for the follow-on work and his work under the BPA in preparing pre-solicitation acquisition documents. The CO noted that this was a violation of Mr. Swart's NDA, and cited that fact as evidence of the lack of force and effect of the purported mitigation plans in place for Monterey and CACI. *See* AR 1737. He informed Monterey of this new finding by letter dated November 24, 2014, in which he confirmed the agency's intent to "rescind" its task order award to Monterey, effective December 25, 2014. AR 1736-46.

Monterey filed suit here on December 3, 2014; Loch Harbour subsequently intervened on the side of the government. Plaintiff's initial complaint sought declaratory and injunctive relief, challenging both the agency's OCI investigation and Loch Harbour's eligibility to receive award as a small business. Monterey filed a motion for preliminary injunctive relief along with its complaint. We denied that motion on December 4, 2014. Following a size determination regarding Loch Harbour by the Small Business Administration, plaintiff amended its complaint on January 5, 2015, dropping its allegations challenging Loch Harbour's eligibility for award. The parties subsequently filed cross-motions for judgment on the administrative record,

limited to the issue of the asserted OCI. Plaintiff challenges the CO's determination and corrective action as both irrational and wrong in fact.

DISCUSSION

We have jurisdiction over challenges to agency action "in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1) (2012). This includes challenges to corrective action taken by the agency after an award has been completed. *Sys. Application & Techs. v. United States*, 691 F.3d 1374, 1381-82 (Fed. Cir. 2012) (citing *Turner Const. Co. v. United States*, 645 F.3d 1377 (Fed. Cir. 2009)). Our review is limited to the existing administrative record generated by the agency in connection with the procurement action at issue. *See* Rule 52.1 of the Rules of the United States Court of Federal Claims. In conducting our review, we adhere to the standards set forth in section 706 of the Administrative Procedure Act ("APA"), which means that we will vacate an agency's decision only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A) (2012). The protestor bears the burden of establishing that the agency's decision lacked a rational basis or was otherwise in violation of applicable law or regulation. *See Impresa Construzioni Geom. Domenico Garufi v. United States*, 238 F.3d 1324, 1332 (Fed. Cir. 2001).

This is a highly deferential standard, particularly when coupled with the judicial presumption of governmental regularity. *See Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1085 (Fed. Cir. 2001). We are thus not at liberty to substitute our judgment for that of the agency so long as the agency's judgment had a rational basis in light of the administrative record. In the context of an organizational conflict of interest, the Federal Circuit has explained that each situation should be examined "on the basis of its particular facts and the nature of the proposed contract," and that, "the identification of OCIs . . . requires the exercise of considerable discretion on the part of the agency." *Turner*, 645 F.3d at 1384. This means that contracting officers must be afforded "great latitude in handling OCIs," and thus their decisions will not be reversed absent irrationality. *Id.* at 1384-85. It is important also to recognize that the CO need not find an actual organizational conflict. All that is necessary to support agency action in response to an OCI is the potential for impropriety. *Id.* at 1387; *see also Compliance Corp. v. United States*, 22 Cl. Ct. 193, 205 (1990) (stating that the CO may disqualify an offeror based "solely on the appearance of impropriety when, in his honest judgment, it is necessary to do so to protect the integrity of the procurement process.").

Plaintiff argues that the CO's decision regarding Monterey's OCI was irrational because it was both factually unsupported and wrong in the particulars. The government disagrees, arguing that the CO's investigation and conclusions were reasonable and based on undisputed facts. We will examine each of the CO's findings in turn.

I. Monterey's Potential Organizational Conflict of Interest

In the November 17, 2014 letter to Monterey, the CO stated that Monterey had a potential conflict of interest due to access to government requirements and solicitation documents prior to the release of the RFQ. Although somewhat awkwardly worded, his conclusion is clear: "As a result, it cannot be said that Monterey was not provided an unfair competitive advantage for award over other offerors who did not have access to the Government's requirements and other acquisition documents prior to submission of their offers." AR 1598. As a basis for this conclusion, the CO detailed that his investigation revealed that Monterey and its subcontractor CACI had access to solicitation and acquisition documents and "provided administrative duties and recommended edits to the requirements documents," including the performance work statement, internal government estimates, Performance Requirements Summary, Determination and Findings, "QASP" and other attachments to the solicitation. *Id.* Although the letter is not specific as to which of these documents were accessed, edited, or otherwise only available for access by plaintiff's personnel, the problem is clear: prior to public availability, Monterey had access to information that could give it a competitive edge in crafting its proposal for the follow-on procurement.

The CO then identified a compounding problem–that Monterey did not have an OCI risk mitigation plan to alleviate the problem of access to documents. The CO stated that neither "the Deputy director [of] OSDBU for Acquisition and Contract Support Team, Administrative CO for the IPT BPA nor the CO for the new award . . . were aware of an OCI Risk Mitigation Plan for Monterey as alleged in Monterey's response letter dated November 4, 2014." AR 1598-99. As further support for this finding, the CO quoted Monterey's proposal for the IPT BPA in which Monterey represented that it was not aware of any OCI related to the work under that solicitation. The CO recognized that Monterey, and presumably CACI, employees had signed non-disclosure agreements during their work on the BPA and in support of the acquisition, but found this fact to be unavailing for Monterey because of the absence of a risk mitigation plan. He found these measures to be inadequate because Monterey had not shown how the NDAs themselves would "avoid or

mitigate any actual or potential [OCIs]." AR 1599.

Plaintiff attacks those findings as unfounded for two reasons. First, as to the unequal access to information, plaintiff argues that Monterey's work on the BPA "did not involve the development of requirements/performance work statements." Pl.'s Mot. for J. on the AR 18. This is critical in its view because it shows a lack of prejudice to the agency and other offerors from Monterey's access to information prior to the solicitation's release. In essence, "no harm, no foul" is plaintiff's view of the situation. Plaintiff further directs our attention to the CO's questions to government personnel and their answers, in which Jeffery Gault, Acting Director of CVE, states that CVE "fire walled Monterey from every activity in the requirements preparation" and that Monterey had no role in formulating the performance work statement, costing, or any other contract documents.[6] AR 1561. Monterey cites this court's decision in the *IBM Corporation v. United States* protest, decided in late 2014, for support. There, we found the army's decision not to exclude an offeror was rational even when that challenged offeror employed a former Project Manager at the army who had a role in developing the statement of work and cost estimates for the solicitation at issue. 119 Fed. Cl. 145, 160 (2014). Plaintiff's point is that, if that level of a conflict of interest was not enough to disqualify the offeror there, neither should a CO's less-specific finding of mere access to pre-solicitation documents be enough to disqualify it here.

Second, plaintiff argues that any document it might have had access to eventually became public anyway, further supporting its notion of lack of prejudice to other offerors. Several of plaintiff's personnel provided declarations to the CO to that effect. Third, plaintiff points to the NDAs signed by its employees as evidence of the fire wall maintained by Monterey pursuant to its mitigation plan. It avers that none of its employees with access to the server on which solicitation and other acquisition documents were stored were allowed to work on its proposal for this RFQ. Instead, according to plaintiff, only government employees had a hand in preparing acquisition documents such as the statement of work and other requirements documents. Thus, despite access, Monterey gained no competitive advantage from its

---

6. Plaintiff also attached to its filings an unsworn statement from Mr. Gault in which he expounds further on these statements. That document, though referred to in plaintiff's briefing, was not offered as a supplement to the administrative record. We do not think it necessary to effective judicial review, and, as such, we have not considered it.

incumbency, urges plaintiff.

Defendant responds by relying on the undisputed facts that 1) Monterey and/or CACI did acquisition support work under several BPA call orders, 2) the RFQ was a follow-on from two BPA call orders performed by Monterey, 3) Monterey personnel had access to all solicitation documents, including confidential documents never shared with other offerors, and 4) Monterey was required by the RFQ to identify any potential OCIs but failed to do so. This, in combination with the RFQ's stated assumption that anyone who had previously performed CVE verification work was presumed to be ineligible, *see* AR 953, provided the necessary backdrop to support the CO's investigation and conclusion, according to defendant. Defendant also argues that the CO's finding that Monterey employees had a hand in document creation (at the very least, editing) was well founded. It bases that argument on the statements of Mr. Skinner, referenced by the CO in his questions and answers to government personnel, despite plaintiff's reliance on Mr. Gault's statements to the contrary. *See* AR 1561 (CO Questions to OSDBU CVE Personnel). Although defendant recognizes that plaintiff disputed and still disputes that it did not have an OCI plan in place, defendant relies on that fact as the proverbial "nail in the coffin" for Monterey's proposal. In light of unfettered access to documents and the lack of a mitigation plan, the CO reasonably concluded that there was a potential OCI, according to defendant. The government cites the Federal Circuit's decision in *NKF Engineering, Inc. v. United States*, in which the court held that the mere appearance of impropriety was sufficient to disqualify an offeror because of the agency's interest in preserving the integrity of the acquisition process. 805 F.2d 372, 377 (Fed. Cir. 1986). In contrast, the *IBM* decision of this court, defendant argues, is inapposite because the agency and the court found the work done by the person in question was over 3 years prior and thus "stale" for purposes of creating an OCI.

We agree with defendant. In light of the government's interest in safeguarding the integrity of the procurement process, the facts on this record establish the rationality of the CO's conclusion. We begin with the undisputed facts. Plaintiff had access to all of the acquisition documents, and at least one or two Monterey/CACI employees did access them when providing editing and other quality control services in support of the acquisition efforts of OSDBU/CVE. *See* AR 1560-66. Plaintiff admitted at oral argument that it did have access to some documents never released to the public, such as the internal government cost estimates. With regard to other documents, regardless of whether they later became public, it is not disputed that Monterey

had access to them first. This creates, on its face, the potential for an OCI. Monterey therefore had a duty to mitigate that conflict or face ineligibility to bid on the follow-on solicitation. The FAR requires contracting officers to identify and evaluate potential OCIs and to "avoid, neutralize, or mitigate significant potential conflicts before contract award." 48 C.F.R. § 9.504(a) (2014). The solicitation thus stated a presumption that offerors who had performed support of CVE verification in the past would be ineligible for award and also required any offeror who identified a potential OCI to provide and implement a mitigation plan to alleviate the possibility of unfair competitive advantage. *See* AR 953-54.

The CO found Monterey not to have had a mitigation plan in place during its performance of the BPA. Several agency officials told the CO that they were unaware of any mitigation plan during Monterey's performance under the BPA. The CO took into account the representation by Monterey in its BPA proposal that it had no actual or potential OCIs as evidence that it did not have a mitigation plan in place, along with the fact that it did not present a plan with its bid for the follow-on RFQ. *See* AR 1621 (Excerpt from Monterey's BPA proposal). He took both of those facts at face value as indications of plaintiff's then-belief that it had nothing to mitigate. He thus gave no credit to the after-the-fact plan provided by Monterey.[7] Although Monterey supplied signed NDAs and declarations from various employees, averring that they had no access to solicitation information and, in any event, had no role in solicitation preparation, the CO reasonably concluded that these measures were insufficient without a working mitigation plan. He was unprepared to supply, by force of imagination or otherwise, the details of how non-disclosure agreements would actually operate to prevent, at a minimum, the appearance of impropriety.

---

7. At oral argument, intervenor pointed to language in Monterey's purported mitigation plan regarding solicitations related neither to the current RFQ nor the BPA. The inference to be drawn, argues intervenor, is that this mitigation plan had no specific relevance to Monterey's work in support of CVE and OSDBU under the BPA, which would mean that it was either not in fact related to that work or it was wholly insufficient to mitigate any specific conflicts that arose as a result of the BPA work. Although not necessary to our conclusion, we agree with intervenor and defendant in this as well. Our examination of the plan provided to the CO provides us with little confidence that it was related specifically to the work performed by Monterey under the BPA.

The CO reasonably viewed the facts as establishing a potential OCI. Plaintiff thus had a duty to mitigate that conflict prior to bidding on the follow-on work. The CO found its efforts in that regard to be inadequate in view of the absence of a mitigation plan. Given the discretion we afford on review of agency action in this regard, we cannot say that the CO acted arbitrarily and capriciously with regard to his conclusion of a potential, unmitigated OCI.

Likewise, we see no conflict between our holding here and our holding in the *IBM* case. There, the CO relied on a letter from the DOD general counsel's office regarding the potential for a conflict of interest involving a former army employee, which found little chance for a problem with regard to the specifics of that employee and that solicitation. *IBM*, 119 Fed. Cl. at 160. In addition, the court found that any information gained by that specific employee was stale by the time of the actual solicitation at issue, three years later. *Id.* at 161. Here, the CO found very recent potential access to pre-solicitation documents and no plan for mitigation. The information that might have been gleaned was neither stale nor irrelevant. The CO's finding of an unmitigated potential conflict of interest was thus neither arbitrary, capricious, nor contrary to law.

II. Monterey's Actual Organizational Conflict of Interest

On November 24, 2014, the CO sent an additional letter to Monterey, informing it of a further basis for the recision of Monterey's award. In this letter, Mr. Boughner states that he found an actual OCI existed. He relied on emails between Mr. Swart and Ms. Wilson, two CACI employees working under Monterey's BPA. He states that Mr. Swart was "involved in formulating Monterey's proposal in response to RFQ VA119A-14-Q-0334. Mr. Swart was also intimately involved in the formulation of the PWS, Market Research, and IGCE documents, and had access to all requirements documents prior [to] the solicitation being released for quotes." AR 1736. The CO found in these email exchanges a violation of Mr. Swart's NDA. This is then cited by the CO as evidence that any mitigation plan alleged by plaintiff to have been in place by Monterey or CACI was either not implemented or not followed by their employees. *See* AR 1737. Thus, the CO concluded by reaffirming his decision to rescind the award to Monterey.

It is important to understand that the solicitation referenced by the CO in this letter is not the present solicitation. It instead relates to other work in support of OSDBU, separately solicited. This work for OSDBU was, however, previously consolidated under the single BPA held by plaintiff prior

to the solicitation at issue. Plaintiff's primary argument in this regard is thus that the actual OCI is irrelevant to the issues at bar and could not have presented a reasonable basis for the CO's conclusion to rescind Monterey's task order award. Plaintiff also presents the three unsworn statements of Mr. Swart to argue that the CO was factually incorrect in his findings of an actual OCI.

Defendant answers that the OCI resulted from related work under the same prior contract and thus is highly relevant to Monterey's eligibility to bid on the solicitation at issue here. The fact that the same alleged mitigation plan should have prevented Mr. Swart's disclosure of pre-solicitation information is important, asserts defendant, because it shows the irrelevance of that plan to Monterey's OCI.

Although the CO's conclusion was reasonable even absent this evidence of actual impropriety, we agree that it provides further support for his conclusion and recision of Monterey's award. Plaintiff reads too much into the November 24 letter and relies to heavily on an arbitrary division of the two solicitations. Rather than relying on the OCI with regard to the OSDBU work and that separate follow-on acquisition, the CO cited this information as illustrative of what it identified as the primary problem he found with regard to Monterey's potential OCI for the CVE solicitation. The critical passage of the November 24 letter is as follows: "The arguments provided in Monterey's November 19, 2014 letter that Mitigation Plans were in place by Monterey and CACI to avoid OCI is unfounded, as the implementation of any alleged plan was clearly not followed by Monterey employees." AR 1737. Mr. Boughner was clearly aware of which solicitation he was referencing, listing the solicitation for the OSDBU work correctly in the November 24 letter. He knew it was not the CVE solicitation, but he found the disclosure to be evidence of the lack of an effective mitigation plan. The mitigation plan alleged to have been in place for this solicitation is the same as that which should have prevented the actions of Mr. Swart with regard to the OSDBU work solicitation. Because it was the same purported mitigation plan at issue in both instances, it was proper for the CO to have considered the actions of Mr. Swart regarding the related solicitation. The CO's conclusion was thus not irrational in this regard.

## CONCLUSION

We find that the contracting officer's decision to rescind the award to Monterey was rational and supported by the record. The CO correctly

identified a potential OCI on the part of plaintiff as the incumbent contractor and a bidder for the follow-on procurement. The CO further found that plaintiff had no effective, implemented risk mitigation plan, leading him to conclude that Monterey should have not have been awarded the contract. We find no irrationality in his conclusion. Accordingly, plaintiff's motion for judgment on the administrative record is denied; defendant's and intervenor's cross-motions for judgment on the administrative record are granted. The Clerk is directed to enter judgment for defendant. No costs.

s/ Eric G. Bruggink
ERIC G. BRUGGINK
Judge